31883.   GOODYEAR CLEARWATER MILLS *v*. WHEELER.

DECIDED JULY 16, 1948.   REHEARING DENIED JULY 28, 1948.

*Neel & Ault,* for plaintiff in error.
*Cecil D. Franklin,* contra.

MacIntyre, P. J. ■ A petition is subject to general demurrer if all the essential elements of the cause of action are not alleged, for if one is lacking the petition is not sufficient. In other words, to withstand a general demurrer all such essential elements must be alleged by setting forth evidentiary or preliminary facts which would demand, as a matter of law, a conclusion that a cause of action existed. See *Bivins* v. *Tucker*, 41 *Ga. App.* 771, 774 (154 S. E. 820).

While a petition is sufficient to withstand a general demurrer if all the essential elements constituting the gist of the cause of action are alleged, a special demurrer may require each of these essential elements to be set forth plainly, fully and distinctly, so as to compel the pleader to disclose whether he *really* has a cause of action and to enable the plaintiff's adversary to understand the exact nature of the claims made against him and thus enable him to prepare his defense. The plaintiff does not have to "spread out in his petition an exhaustive statement of the exact evidence upon which he will rely for recovery." *Hobbs* v. *Holliman*, 74 *Ga. App.* 735 (41 S. E. 2d, 332), and cit.; *Tufts* v. *Threlkeld*, 31 *Ga. App.* 452, 462 (121 S. E. 120). "Reasonable definiteness and certainty in pleading is all that is required; and factitious demands by special demurrer should not be encouraged. Indeed, it is the opinion of the members of this court that this 'critic,' not of the old school but of recent times—special demurrer, has lately been given much greater recognition in our courts than his importance or his usefulness has ever deserved." *Busby* v. *Marshall*, 3 *Ga. App.* 764 (60 S. E. 376).

The petition states clearly the facts upon which liability is claimed. The test is: Would these facts, if proved, support a finding in favor of the plaintiff? Applying this test to the petition we do not think that it is subject to the general demurrer; and considering the allegations of paragraphs 12, 15, and 16, to which special demurrers were filed, together with the allegations of the entire petition, we do not think such special demurrers urged to these paragraphs, as shown in the statement of facts, are meritorious. The court did not err in overruling all the demurrers, both general and special.

■ The jury, during their deliberations, returned to the courtroom and inquired of the court whether there was any evidence

that the plaintiff's car was parked in the parking lot. The court informed the jury that there was evidence that the plaintiff parked in the parking lot, but that the matter of evidence was for the jury. Later, the judge, upon his own motion, no further request for recharge having been made by the jury, called the jury back and in response to their previous inquiry charged them as follows: "The existence of a fact testified to by one positive witness is to be believed, rather than that such fact did not exist because many witnesses who had the same opportunity of observation swear that they did not see or know of its having existed. This rule shall not apply when, two parties having equal facilities for seeing or hearing a thing, one swears that it occurred, the other that it did not." This charge is in the language of Code § 38-111. Such section should not be given in charge except in clear cases; and where under the evidence the rule embodied in § 38-111 can properly be given, the judge should also and in connection therewith give an instruction that the jury in weighing the testimony of such witnesses must consider and pass upon the question of their credibility. In short, in the instant case, the judge did not explain that the rule laid down in such Code section, relative to positive and negative testimony, applies only where the witnesses are of equal credibility and his failure to do so was reversible error. *Moore* v. *State*, 57 *Ga. App.* 287 (195 S. E. 320); *Great American Indemnity Co.* v. *Oxford*, 68 *Ga. App.* 884 (24 S. E. 2d, 726), and cit.

■ The first ground of the amendment to the motion for a new trial contends that the court erred in admitting testimony of the plaintiff to the effect that immediately after he got off from work at eight o'clock in the morning and discovered that his automobile was missing, he went to Mr. Buford McDonald, the defendant's private policeman and gatekeeper, before he left work and while he was still in his guard's uniform, and to the effect that Mr. McDonald admitted that soon after the change of shift he had allowed two boys, one of whom said that he had left his car on the lot when he got off from work, to enter the parking lot and remove a car answering the description of that of the plaintiff. The defendant objects that "Mr. McDonald is not such an agent as to bind the company [by an admission against interest], other than as a part of the res gestæ," and that this is not a part of

the res gestæ because it occurred some hours after the alleged theft and after McDonald had gone off duty.

"While time is an important element to consider in determining what sayings constitute part of the res gestæ of any transaction, yet it is by no means the only thing to be considered. 'The res gestæ of a transaction is what is done during the progress of it, or so nearly upon the actual occurrence as fairly to be treated as contemporaneous with it. No precise point of time can be fixed a priori when the res gestæ ends. Each case turns on its own circumstances. Indeed, the inquiry is rather into events than into the precise time which has elapsed. Is the proof offered of a matter fairly a part of the same transaction? Is it an event happening naturally and spontaneously as a part of the occurrence under investigation?'" *Thornton* v. *State,* 107 *Ga.* 683, 686 (33 S. E. 673). Where the transaction or main fact was the stealing of the plaintiff's automobile from the parking lot in question; where the plaintiff discovered such theft a few hours after its occurrence and immediately reported the same to the keeper of the gate through which the stolen car had been taken, and where under the circumstances at such time, when the theft was first reported to and brought to the attention of the gatekeeper, who, though preparing to go off duty, was still at the scene of the theft, he immediately made the declaration in question—Chief Judge Sutton, Judges Gardner, Parker and Townsend hold that such saying was an event happening naturally and spontaneously as a part of the res gestæ of the transaction involving the theft of the car, and that the judge did not err in admitting the testimony. Judge Felton and the writer can not agree with the majority, but think that such testimony was inadmissible.

■ Ground two of the amendment to the motion for a new trial contends that the court erred in admitting over objection the testimony of Hiram Weaver, a witness for the plaintiff, in regard to a notice which had been placed on his and other cars which were parked outside the fence, informing the owners of the cars that they must park inside the fence, the witness testifying that he did not recall whether the notices were signed and that he did not know who placed them upon the cars. The defendant objected to this testimony on the ground that the notices were

not shown to be connected with the company or with any authorized representative of the company. The court, however, admitted the evidence with the following statement: "I will allow the testimony to remain in. It is not binding on the company unless it is shown that the company, by its agents, posted the notice in the car."

The objection to this testimony at this time was well taken; and if it were not connected up with the company, it would not be admissible. However, it seems to us that the effect of the ruling by the court was that he admitted the testimony, conditioned upon the plaintiff connecting it with the defendant by showing that its agents posted the notice in the car. Therefore, under such a ruling by the court, if the later evidence did not so connect up this testimony, counsel for the defendant should have renewed his objection. The record is silent as to his having renewed the objection; and as to this ground there was no reversible error.

■ Ground three of the amendment to the motion for a new trial objected that the court erred in charging the jury as follows: "If, however, you believe from the evidence that the defendant provided a parking place for its employees doing their period of employment, and required· its employees to use this parking place provided, and this provision by the defendant was beneficial to the defendant in the operation of its business, then in that event the defendant would be liable as a bailee for hire." The ground contends that there was no evidence upon which to base such charge to the jury that they could find the existence of the bailor-bailee relationship. Ground four of the amendment to the motion for a new trial was also based upon an allegedly erroneous charge on the law of bailment on the ground that the evidence did not support the charge.

CHIEF JUDGE SUTTON, JUDGES GARDNER, PARKER and TOWNSEND, expressing the majority opinion of the court, state: "Under the facts of this case, the parking of the car was a bailment for the benefit of both. The employer maintained around its mills a high wire fence, with gates equipped with locks, and generally these gates on the outside fence were attended by employees of the employer with police authority. Inside of the enclosure around the property of the mill was constructed and maintained

a fence-enclosed parking lot for the use of the employees who worked in the different departments of the mill, generally inside the main building. The evidence shows that there was a gate into the entrance of the parking lot from the main enclosure entrance of the employer's property. The duties of this police gatekeeper at the main gate were to unlock the gate about thirty minutes before the changing of a shift and keep it open until about thirty minutes after the time for changing shifts. During this period the ingoing shift would enter the parking lot by the permission of the gatekeeper, the employee would park his car, generally take out the switch key, go from the parking lot through the parking lot gate into the main grounds, then into the main building of the mill to take up his respective work. The outgoing shift would leave their place of employment in the mill, pass through the main grounds, obtain their cars, drive through the gate to the parking lot into the main premises, then pass through the outside gate and away from the mill premises. During the period of time between parking the car in the parking lot and re-entering the parking lot to obtain his car, the car of the employee was in the exclusive possession of the employer, and except for the time when shifts were going in and out of the parking lot, was under lock and key of the gatekeeper. There was no evidence tending to show that tickets or identification cards were issued by the gatekeeper to the employee who parked his car in the parking lot; however, we do not think that the issuance of tickets or identification cards is essential to the establishment of a bailment under the facts of this case. Furthermore, the evidence shows that, prior to the time the employee's car in the present case was stolen, the employer had bulletins posted throughout all departments of the mill which bulletins in substance said that the employer would not be responsible for any car which was parked in the parking lot which was provided by the employer for the employees to park their cars while on duty inside the mill. It also appears that after these bulletins were published, all employees, so far as was known, did park their cars in this parking lot. In our opinion, the facts of this case bring it within the principle of law laid down in the case of *Dilberto* v. *Harris*, 95 *Ga.* 571 (23 S. E. 112), and the principles ruled in the following cases: *Atlantic Coast*

*Line R. Co.* v. *Baker,* 118 *Ga.* 809 (45 S. E. 673) ; *Parker Motor Company* v. *Spiegal,* 33 *Ga. App.* 795 (127 S. E. 797) ; *Keene* v. *Lumbermen's Mutual Insurance Co.,* 60 *Ga. App.* 864, 867 (5 S. E. 2d, 379) ; *Elliott* v. *Levy,* ante, 562 (49 S. E. 2d, 179). " 'A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust.' Code, § 12-101. 'All bailees are required to exercise care and diligence in protecting and keeping safely the thing bailed. Different degrees of diligence are required, according to the nature of the bailments.' Code, § 12-103. Where the object of the bailment is beneficial to both parties the degree of diligence required of the bailee is ordinary care. *Merchants National Bank* v. *Guilmartin,* 88 *Ga.* 797, 799 (15 S. E. 831, 17 L. R. A. 322) ; *Renfroe* v. *Fouché,* 26 *Ga. App.* 340 (106 S. E. 303). 'In all cases of bailment after proof of loss, the burden of proof is on the bailee to show proper diligence.' Code, § 12-104. It is reversible error for the trial judge to relieve the defendant of the duty imposed by this section of the Code, and to so charge the jury as to put the burden of showing negligence on the plaintiff. *Richter Bros.* v. *Atlantic Co.,* 59 *Ga. App.* 137 (200 S. E. 462). 'Loss of property after its delivery to another authorizes an inference that the loss was occasioned by negligence of the person receiving it.' *Atlantic Coast Line R. Co.* v. *Barksdale,* 32 *Ga. App.* 643 (1) (124 S. E. 362). 'The relation of the owner of an automobile and the owner of the garage in which the automobile is stored is that of bailor and bailee. Such bailee is bound to use ordinary care for the safe-keeping and return of the automobile.' Code, § 12-403.

"Indeed, we know of no sound reason or law why an automobile is not just as capable of being the subject-matter of a bailment as any other property, where the facts and circumstances show or authorize an inference that the relationship of bailor and bailee exists between the parties concerned.

"The majority of the court hold that the evidence authorized the charge on bailment and that special grounds three and four of the amended motion for a new trial show no error on the ground that the evidence did not support the charge."

With this the writer can not agree. Counsel for the plaintiff, as authority for the proposition that the transaction here under consideration was a bailment, cites the case of *Dilberto* v. *Harris*, 95 *Ga.* 571 (supra), Justice Bleckley dissenting, wherein it was held that a barbershop proprietor was the bailee of a customer's hat which had been placed on the regular hatrack, provided for that purpose, prior to his taking the barber's chair for a shave, because the depositing of the hat was a necessary incident to the business of the barber and the barber was assumed to have taken possession of the hat as a bailment by virtue of the invitation to customers to place their hats on the rack. It is true that there is a line of cases in several jurisdictions following this reasoning; however, the tendency has generally been to restrict the doctrine and not to imply a transaction to be one of bailment in the absence of a clear intent of the store proprietor to take exclusive possession. Suffice it to say that I have found no case in which a court has extended the *Dilberto* doctrine to an automobile parking-lot transaction; but, on the contrary, the various jurisdictions have uniformly held automobile bailments within the confines of the common-law rules applying to commercial bailments generally, requiring a delivery of the exclusive possession of the automobile to the bailee before the transaction can be held to be one of bailment with its consequent rights and liabilities. Georgia has followed the tendency of other States in refusing to further abuse the law of bailment by departing from the normal requirements necessary to the existence of a bailment; and the writer is not prepared to depart from the precedents so set. Considering automobile parking-lot cases as a class, there are three subclasses of cases which have arisen from the courts consciously or unconsciously.

In the first class of parking-lot cases, where there is a clear delivery of possession to the parking lot proprietor or his agents by virtue of a claim check, and where the parking-lot agent retains the keys, drives the car into the lot, parks it, and redelivers it to the customer at the entrance or exit of the lot only upon the presentation of the claim check, the courts have uniformly held the transaction to be a bailment, and the rights and liabilities of the parties have been governed accordingly. There is some difference of opinion as to the burdens of proof and evidence in

the various jurisdictions, but the rule in Georgia is that—in accord with the usual bailment rule in this State—if the bailee fails to deliver the property upon presentation of the claim check and the bailor so alleges in his petition and proves at the trial, he has made out a prima facie case of breach of the bailment contract; and after such proof of loss, the burden of proof is on the bailee to show proper diligence. Code, § 12-104; *Renfroe* v. *Fouché*, 26 *Ga. App.* 340 (supra). This class of cases is entirely in accord with the general rule in Georgia that there must be an actual or constructive delivery of the goods and actual or constructive possession in the bailee, exclusive and independent of the bailor and all other persons. Code, §§ 12-101, 12-102; *Atlantic Coast Line R. Co.* v. *Baker*, 118 *Ga.* 809, 810 (45 S. E. 673). The following group of cases, which is possibly not exhaustive, but which is relatively complete at the present time, accords with this first classification: *White* v. *American Ins. Co.*, 53 *Ga. App.* 320 (185 S. E. 605); *Crawford* v. *Hall*, 56 *Ga. App.* 122 (192 S. E. 231); *Keene* v. *Lumbermen's Mutual Ins. Co.*, 60 *Ga. App.* 864; *American Ins. Co.* v. *Keene*, 61 *Ga. App.* 754 (7 S. E. 2d, 427).

In the second class of cases, where although a fee is paid, a claim check may be given, and the parking lot may be enclosed, the customer drives his own car into the lot, parks it, locks it or not as he chooses, retains the key, and returns to claim the car himself and drive it away without consulting the parking-lot proprietor or attendants. In this group it is generally held that there is a mere lease of parking space or license to enter and use the space, and that there is no bailment because the essential elements of delivery and possession are absent. "Although categorical statements are always hazardous, it seems fairly safe to conclude that no court would now hold a case of this type to be a° bailment; the essential element of possession is lacking and the obligations imposed on the operators of such lots are not consistent with the concept of bailment." Laurence M. Jones, *The Parking Lot Cases*, 27 Georgetown Law Journal, 162. This second classification has also been recognized by this court. *Southeastern Fair Assn.* v. *Ford*, 64 *Ga. App.* 871 (14 S. E. 2d, 139). In this class of cases, the parking-lot proprietor is not a bailee and the incidents, rights and liabilities of the bailment

relationship are not present. In the absence of an assumption of responsibility for the safety of the automobile, the parking-lot proprietor is in the position of any third party so far as his relationship toward the property of the customer is concerned and he is responsible only for his affirmative acts of negligence which themselves damage the property of the customer.

But there is also a third class of parking-lot cases in which the manner of conducting the parking-lot business is much the same as in the second class with the lot proprietor assuming no possession of the automobiles parked on his lot; however, as is intimated above, although he does not take possession of the automobile, he may assume responsibility for the safety of the automobile by virtue of his conduct toward the customer and his automobile, or by virtue of express agreement with the customer, the responsibility in either case arising out of the agreement, which is in the nature of a "special contract" to assume the responsibility of protecting the automobile. In these cases although the elements of bailment are absent because of the lack of actual physical control and possession of the car itself, the rights, liabilities and remedies of the parties are much the same as they are in the case of a bailment. So far as we can ascertain, no Georgia cases have turned on this point as yet, but the same may arise at any time; and there are several cases of this nature in other jurisdictions, e. g., Pennyroyal Fair Assn. v. Hite, 195 Ky. 732 (243 S. W. 1046); Thompson v. Mobile Light &c. Co., 211 Ala. 525 (101 So. 177, 34 A. L. R. 921).

It is not pretended that this treatment is exhaustive and there are many cases which do not clearly fall in any one of the three classes of parking-lot transactions set out; but the majority of cases are brought within one of these classifications by their facts. Credit for the preceding analysis is given to Laurence M. Jones, *The Parking Lot Cases,* supra, and to Note, 131 A. L. R. 1175. For a more detailed discussion of the cases and principles involved see these articles, and see also *Southeastern Fair Assn.* v. *Ford,* supra.

While the defendant in the present case is not the proprietor of a parking lot for profit, the principles of the above classifications apply equally well here if any consideration, on which a contract —of bailment for mutual benefit or of special contract to assume

responsibility for the automobiles—can be predicated, passes to the defendant. Or if no consideration passes to the defendant, he would be a gratuitous bailee for the benefit of the plaintiff if he assented to the bailment of the automobile and would be responsible for only gross negligence in caring for the car; or in the absence of both possession and consideration, he is in the relation of any third party to the plaintiff's automobile and is responsible only for his affirmative acts of negligence which injure the car.

Here the evidence showed that the policeman who locked and unlocked the gate in the fence, which enclosed the premises of the defendant, to permit the employees ingress and egress was the only employee stationed and functioning at or near the parking lot on such premises. Such policeman gave no ticket of identification, or of any other character, to the employees who parked their cars within the wire fence and upon the defendant's premises during the "shift" on which they were there employed. The policeman did not park the cars, nor were they parked under his direction or supervision. The employees kept the keys to the cars, reclaimed the cars and left the parking place without consulting the policeman, and the policeman could not even move the cars from one place to another on the parking lot. The evidence shows that the enclosure where the cars were parked was wired in by the defendant for the use of its employees; that it was there for the specific and temporary use of its employees while they were working on their respective "shifts"; that a large number of cars came for the same purpose, and naturally about the same time, at each change of "shift"; and that all, on each change of "shift," would want to leave about the same time. A surrender of the possession of each car to the defendant to be redelivered to the rightful owner at the end of each shift would clearly call for a force of employees or a resort to a system of multiple checks to identify the car and driver when the car was taken from the parking lot. This, it may easily appear, would cause delay and annoyances and add greatly to the expense and defeat the convenience offered to its employees by the defendant. Even if the evidence authorized a finding that the defendant suggested that the employees park in the parking place and said that it would not otherwise be responsible for the

safety of the cars, and the employees did so, under the circumstances disclosed by the evidence there was no delivery by which the defendant acquired that independent and temporarily exclusive possession which is essential to a bailment.

I do not think that the evidence shows a bailment. It might have shown an implied contract on the part of the defendant that it would keep a look-out watch or a "general look-out" at all times when the cars of the employees were parked in the parking lot in question while they were working on their respective shifts. Code § 12-101 provides: "A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee, or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." But "delivery under which the bailee acquires an independent and temporarily exclusive possession is essential to the contract of bailment." *Atlantic Coast Line R. Co.* v. *Baker*, 118 *Ga.* 809, 810. Even in the case of a gratuitous bailee he "must assent to the bailment, either expressly or impliedly, before the relationship of bailor and bailee will be established, with its consequent liabilities." *Blosser Co.* v. *Doonan*, 8 *Ga. App.* 285 (2) (68 S. E. 1074). "A 'bailment' is not created unless there is a delivery to and an acceptance of the possession of the article by the bailee." Freeman *v.* Myers Automobile Service Co., 226 N. C. 736 (40 S. E. 2d, 365).

The consequence of the relationship between bailor and bailee is exacting. "In all cases of bailment after proof of loss, the burden of proof is on the bailee to show proper diligence." Code, § 12-104. This shifting of the burden of proof is an exception to the general rule of law that the burden is upon the party asserting or affirming a fact. Code, § 38-103. It is essential to the existence of a bailment that there must be an actual or constructive delivery of the goods and actual or constructive possession in the bailee, exclusive and independent of all other persons, *including the bailor,* until the purpose of the trust has been completed. This burden of proving his diligence is not to be lightly shifted to the defendant in the absence of a delivery to and an acceptance of the possession of the article by him as bailee.

It is manifest that in the instant case there was no such de-

livery of possession as to exclude the plaintiff. It appears that the plaintiff retained the keys to the car and had the right to get in the car, move it, and exercise all the attributes of legal possession over it; but on the other hand the defendant had only one of these attributes of possession. It did not have the keys; it did not direct where it was to be parked; it did not direct how it was to be handled; it had no right to move or even touch the car without the permission of the plaintiff; and it had no right to exclude the plaintiff from exercising his right of possession over the automobile at any time during the shift on which he was employed. The sole attribute of possession which it had as to the car was the physical custody of the same in the sense that it had physical custody of everything within the confines of the fence around the mill when the gate therein was locked—and it did not have even this when the gates were opened for the change of shift. The mere physical custody of the automobile is not sufficient to make a bailment, but the bailee must in addition have the legal possession of the automobile, and this to the exclusion of the possession of all others. *Atlantic Coast Line R. Co.* v. *Baker,* supra.

It seems to me that the plaintiff has failed to prove the existence of a bailment. The fact that the defendant's guard had locked the gate and nothing within the confines of the fence around the mill premises could be removed without unlocking the gate, including the cars of the employees, under the evidence here did not of itself alone make a bailment of such cars, but was merely an incident of the special contract, which may have existed, to care for and protect the car while the plaintiff was at work; and the maintenance of such locked gate was merely a part of the precaution taken or method of execution in carrying out the obligation of this special contract. If the defendant breached such a special contract, or breached any other special contract, he would be liable for such a breach; but the plaintiff should not be allowed to stretch, even to the point of changing, the law of bailment in order to recover.

*How can the burden of showing his diligence in the protection of the property or article be justly placed upon the bailee unless the sole possession and control of the car is given to him, with his assent thereto, so as to give him the power to protect the*

*car against all others including the owner, and in case there should happen to be a fraudulent and dishonest owner, even against him?*

The case is reversed on the ruling contained in division two of the opinion.

This case was considered and decided by the court as a whole, pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. Laws, 1945, p. 232).

*Judgment reversed. All the judges concur in the judgment of reversal. MacIntyre, P. J., and Felton, J., disagree with the rulings in divisions three and five of the opinion.*

FELTON, J., concurring specially. The opinion discloses my views on all of the issues involved in this case except one. In order for the plaintiff to be entitled to a recovery it must appear that the car was lost through the negligence of the defendant at a time when there was either a bailment or a special contract in effect between the parties. I do not think that there was any liability on the part of the defendant, either as bailee or under special contract, during the hour when employees could enter the parking lot and remove their cars. The only thing the defendant undertook to do was to protect the cars while the employees were at work and the gate was locked. It would have been impossible for the defendant, under the plan followed in this case, to protect an employee's car during the hour the gate was unlocked. There was no check on any car and no effort made to see that any particular employee got his own car. Since I do not think that there was any evidence showing that the car was stolen during the time when the defendant was under duty to protect the car, I think the verdict was without evidence to support it.