## 58080. MOSSIE et al. v. PILGRIM SELF-SERVICE STORAGE.

DEEN, Chief Judge.

The appellants, husband and wife, stored certain property on premises controlled by the defendant before leaving for another state. The defendant, a corporation operating a "convenience warehouse" leased stalls to persons desiring to retain possession of stalls which the latter secured with their own locks and to which they retained an unrestricted right of access. On information received from Mrs. Mossie, who investigated the premises, Mr. Mossie executed a lease agreement for one of the stalls and the parties placed their jointly owned personal furnishings in it, secured it with two padlocks purchased by them and left the state. Thomas, an agent of the defendant living on the premises, discovered during a routine check that the stall had been burglarized and informed the lessees. Claims were eventually made and denied and this litigation followed, resulting in a bench trial. Plaintiffs appeal from an adverse judgment.

1. The fact that the plaintiff spouses jointly owned the personalty here involved and that only the husband signed the agreement for space with appellees has no bearing on the case, as there was ample evidence to sustain the finding that Mr. Mossie's actions were the result of at least an implied agency to act in her behalf in the matter, and also that her opportunity for knowledge of the business arrangements was equal to that of her husband. We therefore make no distinction between the parties on the basis that only the husband was a signatory to the lease. *Brogdon v. Hellman,* 119 Ga. App. 464 (2) (167 SE2d 673) (1969).

2. A bailee of property is entitled to its exclusive possession. Code § 12-102. *Atlantic Coast Line R. Co. v. Baker,* 118 Ga. 809 (1) (45 SE 673) (1903); *Goodyear Clearwater Mills v. Wheeler,* 77 Ga. App. 570 (6) (49 SE2d 184) (1948). Where, although an article is turned over generally to be stored on premises owned by another, where the owner retains the right to remove it at will without the knowledge of the person in charge of the premises, no bailment arises. *Southeastern Fair Assn. v.*

*Ford,* 64 Ga. App. 871 (1) (14 SE2d 139) (1941). The relationship in this case, where the property was placed in a space the access to which was retained by the owners, a rental agreement rather than a bailment ensued.

3. The agreement controlling this transaction contained the following language: "STORAGE OF ANY AND ALL PROPERTY WITHIN THE STALL SHALL BE AT TENANT'S SOLE RISK AND NO BAILMENT IS CREATED HEREUNDER, and Landlord shall have no liability for loss or damage to any property of Tenant stored in the Stall or otherwise, regardless of whether such loss or damage is caused by the negligence of third parties or Tenant or by acts of God. LANDLORD SHALL NOT BE LIABLE TO TENANT OR ANY OTHER PARTY FOR ANY NEGLIGENCE OF LANDLORD, WHETHER CAUSED BY LANDLORD'S ACTS OR FAILURE TO ACT WHICH MAY BE CLAIMED TO CAUSE LOSS OR DAMAGE TO TENANT . . . LANDLORD SHALL NOT BE LIABLE TO TENANT FOR ANY LOSS OR DAMAGE THAT MAY BE OCCASIONED BY OR THROUGH LANDLORD'S ACTS, OMISSIONS TO ACT OR NEGLIGENCE OR BY ACTS OF NEGLIGENCE OF LANDLORD'S OTHER TENANTS ON THE PREMISES, OR OF ANY OTHER PARTY WHATSOEVER, OR OF ANY ACT OF GOD, it being hereby understood by Tenant that Landlord does not take custody, control, possession or dominion over the contents of the Stall and does not agree to provide protection for the premises, Stall or contents thereof." It was further agreed that the duty to insure devolved upon the tenant.

One may by contract absolve himself from the consequences of his own simple negligence. *Seaboard Coast Line R. Co. v. Freight Delivery Service, Inc.,* 133 Ga. App. 92 (1) (210 SE2d 42) (1974); *Southern Bell Tel. &. Tel. Co. v. C & S Realty Co.,* 141 Ga. App. 216 (1) (233 SE2d 9) (1977). It follows that that theory of recovery based on negligence in failing to provide adequate security is not tenable. In point of fact no negligence was shown to have been committed by the landlord, and no explanation of the manner in which the burglary occurred could be obtained.

4. The other theory on which recovery was predicated was that there was a breach of the contract *as orally modified* on the part of the landlord. We find no merit in these contentions. Mossie testified that a security pass was issued to him, that lessees were supposed to come to the office, show the pass and sign in, that most of the time he did not do this, that originally he was informed the company had 24-hour security which he "assumed was someone on the premises all the time . . . security police;" that his understanding was that gates were locked at a certain time and you had to have security badges to get in and that they were closed on Sunday. The witness admitted he was never told that persons would not be admitted without signing in, that the statement that the property was fenced was accurate, that gates were locked at night, the place was not open for business on Sunday, the caretakers lived on the premises and he did not understand that in these conversations the intention was to modify or change the contract, that he did not read the contract and did not know whether anything the caretaker said might have varied its terms. The locks which the Mossies had placed on their stall were removed by unknown persons. The evidence taken as a whole demands a finding that there was no agreement between the parties to modify any of the contract terms. Questions as to the amount of surveillance provided (a company was hired to lock the grounds at night and to patrol intermittently) was an assumption made by the tenant prior to signing the lease, and no novation occurred.

The court hearing the evidence without the intervention of a jury stated in the judgment that under Code § 20-704 (1) he did not consider any parol testimony which varied or contradicted the terms of the written contract. This was eminently correct; however, the statements made were of a general character and it appears that the tenant's assumptions rather than the landlord's commitments controlled their interpretation. In particular, Mr. Mossie agreed that he did not understand any conversations subsequent to the execution as a modification of it, and obviously any made prior thereto would merge in the instrument. There was neither intent nor consideration for changes in the

written contract. *Ryder Truck Lines, Inc. v. Scott,* 129 Ga. App. 871 (3, 4) (201 SE2d 672) (1973).

The judgment in favor of the defendant was without error.

*Judgment affirmed. Birdsong and Carley, JJ., concur. Shulman, J., not participating.*

ARGUED JULY 2, 1979 — DECIDED JULY 12, 1979.

*Moulton, Carriere, Cavan & Maloof, J. Wayne Moulton,* for appellants.

*Jones, Bird & Howell, Truly B. Feinstein, Dow N. Kirkpatrick, II,* for appellee.