James D. MERRITT, Plaintiff–Appellee,

v.

NATIONWIDE WAREHOUSE CO., LTD.,
d/b/a Super Safe Self Service Storage,
Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section.

June 27, 1980. ·

Certiorari Denied by Supreme Court
Sept. 15, 1980.

Cleve Weathers, Nashville, for plaintiff–appellee.

C. Bennett Harrison, Jr., Nashville, for defendant–appellant.

## 252

## OPINION

TODD, Judge.

The defendant, Nationwide Warehouse Co., Ltd., has appealed from a jury verdict and judgment awarding to the plaintiff, James D. Merritt, damages of $5,275.00 as a result of the disappearance of the plaintiff's personal property from storage space rented by plaintiff from the defendant.

The complaint alleges that the personal property in question was delivered to defendant under bailment; that it has not been returned upon demand; that negligence of defendant is presumed under T.C.A. § 24–515; that the loss occurred as a result of negligence of defendant; that defendant especially contracted to protect the property of plaintiff and defendant failed to do so; and that defendant had acknowledged responsibility and promised to pay.

All allegations of the complaint were denied in the answer of the defendant.

On appeal, the defendant–appellant presents ten (10) issues, of which the first is as follows:

> Whether the Trial Court erred in ruling as a matter of law that the "Rental Agreement" entered into between Plaintiff and Defendant constituted a bailment rather than a lease.

The contract between the parties is in pertinent part as follows:

| SUPER | Make All Remittances To: |
|---|---|
| SAFE | SUPER SAFE |
| Self Service Storage | 1997 Elm Hill Pike |
| | Nashville, Tenn. 37210 |

### RENTAL AGREEMENT

The undersigned LESSOR hereby rents to the undersigned LESSEE Space No. *153*, for a month to month term beginning on the *4* day of *Feb.*, *1976*. LESSEE agrees to pay LESSOR as rental *16.00* per month. LESSOR hereby acknowledges the sum of *14.00* as the current month's rent. Said rental shall not be refundable in part or whole.

Either party may terminate this agreement upon giving the other written notice thereof 10 days prior to the end of the month the lease is to be terminated.

2. Lessee expressly agrees and covenants with lessor that he will use said premises for the purpose of storage only and that he will not use said premises for an unlawful purpose, that said premises shall not be sublet, and that he will pay the rent each month as it becomes due; that he will keep said premises in good condition (usual wear and depreciation expected), and that he will not store explosive or highly flammable material or goods on said premises, and that he will at his expense obtain his own insurance, if any, on the property stored on said premises, and that lessor shall not be responsible for damage, if any, to said property caused by fire, water, or from any cause whatever; and that lessor shall have the right to enter into and upon said premises at reasonable times for the purpose of inspecting the condition thereof, and further lessor shall furnish electricity and an electrical outlet using a bulb not exceeding 100 watts and it shall be the obligation of tenant to see that light is turned off when unit is locked.

| LESSEE: | | LESSOR: |
|---|---|---|
| James Merritt | Print Name | SUPER SAFE |
| James Merritt | Signature | BY /s/ Roma McCullough |

Plaintiff locked the leased premises. Defendant was furnished no key. Plaintiff placed various items in the leased premises, but never informed defendant as to the nature or quantity of articles stored therein. Plaintiff was free to store or remove whatever he wished without consultation with, permission from, or notice to defendant.

The contract and the actions of the parties thereunder did not create a bailment. A bailment is a delivery of personalty for a particular purpose or on mere deposit, on a contract expressed or implied, that after the purpose has been fulfilled, it shall be re–delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it. *Rhodes v. Pioneer Parking Lot, Inc.,* Tenn.1973, 501 S.W.2d 569; *Dispeker v. New Southern Hotel Co.,* 213 Tenn. 378, 373 S.W.2d 904 (1963); *Breeding v. Elliott Bros.,* 173 Tenn. 382, 118 S.W.2d 219 (1938); 8 C.J.S. *Bailments* § 1, p. 312.

The term "bailment" is derived from the French term, "bailler", meaning to deliver. 8 C.J.S. *Bailments* § 1, p. 311.

■ Actual or constructive delivery of the property to the bailee is required for a bailment, except a constructive bailment, that is, the property must be taken into the bailee's possession. Id., § 15, p. 360.

■ A bailment is ordinarily created by delivery and acceptance and consent or agreement of the parties, but it may also result from actions and conduct of people concerning the goods in question. *Campbell v. State*, 2 Tenn.Cr.App. 39, 450 S.W.2d 795 (1969).

■ In the absence of express contract, the creation of a bailment requires that possession and control pass from bailor to bailee; there must be full transfer, actual or constructive, so as to exclude the property from the possession of the owner and all other persons and give the bailee sole custody and control for the time being. *Rhodes v. Pioneer Parking Lot, Inc., supra.*

■ Such full delivery must be made as will entitle the bailee to exclude the possession of all other persons and put him in sole custody and control. For constructive delivery, transfer of possession must be intended. 8 C.J.S. Bailments § 15, p. 363.

In 78 Am.Jur., *Warehouses*, § 26, pp. 188–189, is found the following text:

> In general, it may be said that where personal property is left upon another's premises under circumstances upon which either the relation of landlord and tenant, or bailor and bailee, might possibly be predicated, the test is whether or not the person leaving the property has made such a delivery as to amount to a relinquishment, for the duration of the relation, of his exclusive possession, control, and dominion over the property, so that the person on whose premises it is left can exclude, within the limits of the agreement, the possession of all others; if he has, the general rule is that the transaction is a bailment. This rule is especially applicable in the case of the storage of goods in a separate room in a warehouse, and it has been held that the facts that the goods are placed in a separate room and that the owner is allowed the key to the room do not make the relation that of landlord and tenant.

> On the other hand, if there is no such delivery and relinquishment of exclusive possession, and the owner's control and dominion over the goods is dependent in no degree upon the co–operation of the warehouseman, and his access thereto is in no wise subject to the latter's control, it is generally held that he is a tenant or lessee of the space upon the premises where the goods are left.

Plaintiff cites *Scruggs v. Dennis*, Tenn. 1969, 440 S.W.2d 20, wherein it was held that a bailment was created by placing an automobile in a parking garage and receiving a receipt from a machine. In that case, the bailee was in the business of storing automobiles, and there was an actual, visible, ascertainable delivery of specific property (an automobile) under an implied contract to re–deliver upon presentation of the receipt.

The locking of the vehicle in *Scruggs* is not equivalent to the locking of the leased room in the present case because the contents of the locked room was never revealed to or knowingly accepted by defendant, no receipt was issued, and defendant made no contract, express or implied, to re–deliver any particular article at any particular time or in any particular condition.

Identification of subject matter and issuance of a receipt to guarantee re–delivery are the characteristics which distinguish *Scruggs* from the present case.

Plaintiff argues that the direct access of Scruggs to his car and plaintiff's direct access to his leased room are equivalent. Not so. Scruggs had access to his car, but could not remove it without surrendering his receipt. Plaintiff had access to his room and could change its contents at will without any condition, for no receipts were issued and none were required to be surrendered upon removal of property.

Plaintiff also relies upon *Jackson v. Metropolitan Government of Nashville and Davidson County*, Tenn.1972, 483 S.W.2d 92 wherein no receipt was issued. However, in that case, there was a personal encounter between the bailor and bailee in which the bailee specifically assumed responsibility for a specific article (an automobile). In the present case, there is no showing of any express acceptance of possession of any particular item or items by defendant. Indeed, defendant was not at any time informed of what was being stored on the leased premises, hence, there could not have been a knowing acceptance of custody as in *Jackson*.

In *Mossie v. Pilgrim Self–Service Storage*, 150 Ga.App. 715, 258 S.E.2d 548 (1979), there was a situation substantially the same as that in the present case, as indicated by the following quotation:

> The appellants, husband and wife, stored certain property on premises controlled by the defendant before leaving for another state. The defendant, a corporation operating a "convenience warehouse" leased stalls to persons desiring to retain possession of stalls which the latter secured with their own locks and to which they retained an unrestricted right of access. On information received from Mrs. Mossie, who investigated the premises, Mr. Mossie executed a lease agreement for one of the stalls and the parties placed their jointly owned personal furnishings in it, secured it with two padlocks purchased by them and left the state. Thomas, an agent of the defendant living on the premises, discovered during a routine check that the stall had been burglarized and informed the lessees. . . .
>
> .     .     .     .     .
>
> 2. A bailee of property is entitled to its exclusive possession. (citing authorities) Where, although an article is turned over generally to be stored on premises owned by another, where the owner retains the right to remove it at will without the knowledge of the person in charge of the premises, no bailment

arises. (citing authority) The relationship in this case, where the property was placed in a space the access to which was retained by the owners, a rental agreement rather than a bailment ensued. 258 S.E.2d at 549.

Plaintiff points out that *Mossie* involved a somewhat broader exculpatory clause and that the *Mossie* opinion recognized the possibility of collateral agreements to furnish security. However, these distinctions are not material to the presently discussed issue of whether the Trial Judge correctly charged the jury as to the duties, presumptions, and burden of proof arising from a bailment which did not exist.

In *T. R. Booth & Co. v. Loy*, 100 Ill. App.2d 333, 241 N.E.2d 315 (1968), plaintiff leased space in a warehouse and locked same, retaining the only key. The court held that the relationship of bailment was not created by such arrangement.

Other authorities annotated in 138 A.L.R. 1137 illustrate the circumstances under which the lease of storage space may, or may not, result in a bailment.

In *Marsh v. American Locker Company, Inc.*, 7 N.J.Super. 81, 72 A.2d 343, 19 A.L.R.2d 326 (1950), it was held that no common law bailment liability was created by the rental of a locker in a railroad station by one who placed jewelry therein, locking the locker and retaining the only key. The A.L.R. annotation following said opinion contains three other cases in which similar results were reached. In a single case, the plaintiff recovered on a theory of negligence in failing to explain to plaintiff and peculiar manner in which the locker door was to be locked.

Plaintiff insists that the locker cases are inapposite because there was no supervision of access to the locker. In the present case, there was no written agreement to provide any supervision of access to the leased space. Any separate or collateral representation or agreement regarding such supervision would be immaterial to the present discussion of whether a bailment was created by the written agreement between the parties.

On the contrary, decisions are uniform that the relationship between a bank and a holder of a safety deposit box is that of bailor and bailee. See 133 A.L.R. 279. This rule is understandable and distinguishable from the present case by the well–known practice of using a two–key lock on safety deposit boxes, one key being kept by the bank and one being retained by the depositor. Under this arrangement, the bank retains control of access, even against the depositor, so that no one, not even the depositor, can gain entrance without the permission and assistance of the bank.

In the present case, the plaintiff having the only key to the leased space and having an absolute right to enter defendant's premises, defendant had no right or power to deny plaintiff access to his space. Under the circumstances of this case, any lessee of any space on defendant's premises had a right to come on the premises, and the only restraint to prevent a fellow lessee from wrongfully entering plaintiff's space was the lock to which only plaintiff had a key.

The Trial Judge charged the jury as follows:

Ladies and gentlemen of the jury, I charge you that the Court has determined that the instrument entitled Rental Agreement is not a lease but is a bailment. Therefore, this is a case of negligence and the burden of proof shifts to the Defendants to prove they were not guilty of any negligence in the theft of the Plaintiff's personal property.

■ In view of the conclusion of this Court that there was no bailment, the foregoing instruction requires reversal; however, other issues need discussion for the guidance of the Trial Judge and counsel upon a retrial.

■ The second issue presented by appellant is as follows:

Whether the Trial Court erred in ruling that the "Rental Agreement" entered into between the parties was void as against public policy and thus did not exculpate the Defendant from liability for any theft of Plaintiff's property stored on Defendant's premises.

Appellee cites authority to the effect that an exculpatory clause *in a bailment contract* is against public policy. Such authorities are rendered immaterial by the holding of this Court that the contract was not a bailment.

■ The general rule is that exculpatory clauses are valid. *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964); *Home Beneficial Association v. White*, 180 Tenn. 585, 177 S.W.2d 545 (1944); *Moss v. Fortune*, 207 Tenn. 426, 340 S.W.2d 902 (1960).

■ The exculpatory clause states, "The lessor shall not be responsible for *damage*, if any, to said property ·caused by fire, water *or from any cause whatever*." Neither the complaint nor any of the evidence refers to damage to plaintiff's property. All emphasis is upon loss. When the terms of a written instrument are unambiguous, the interpretation of the contract is a matter of law for the court. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955); *Godson v. MacFadden*, 162 Tenn. 528, 39 S.W.2d 287, and authorities cited therein.

This Court holds that the exculpatory clause is unambiguous and that it applies to damage only and not to loss (as by theft). On retrial the jury should be so instructed.

The Uniform Residential Landlord and Tenant Act, Title 64, Chapter 28, T.C.A. does prohibit exculpatory clauses, but it is applicable only to residential leases.

■ .The provision of the contract requiring plaintiff to obtain insurance does not relieve defendant of liability for loss, it merely shifts to plaintiff the expense of insurance and duty to obtain same. If the property in question were insured, upon payment of the loss, the insurer would doubtless have subrogation rights against the wrongdoer under the provisions of its policy. See *Duckey v. Indianhead Truckline, Inc.*, 234 Minn. 379, 48 N.W.2d 534 (1951).

The second issue is determined abversely to appellant.

The third, fifth, sixth, and seventh issues presented by appellant are as follows:

3. Whether the Trial Court erred in failing to direct a verdict for Defendant at the close of Plaintiff's proof as a result of Plaintiff's failure to prove his damages by admissible evidence.

5. Whether the Trial Court erred in allowing the Plaintiff to testify on the value of the property claimed to be lost where said value was based solely upon hearsay, and not upon personal knowledge of the Plaintiff.

6. Whether the Trial Court erred in allowing the Plaintiff to testify from a list with regard to his property and the value thereof without the laying of a proper foundation for admissibility of the information on the list.

7. Whether the Trial Court erred in permitting the Plaintiff to assess the value of the property claimed to have been lost without the laying of a proper foundation which would make "the value to the owner" standard admissible.

The general rule is that the owner of property is a competent witness as to its value. *Crook v. Mid South Transfer and Storage, Inc.,* Tenn.App.1973, 499 S.W. 255, and authority cited therein. Appellant relies upon the unpublished opinion of this Court in the case of *Thompson v. Sanders Transfer & Storage Co.,* filed June 30, 1978. Said opinion explains in careful detail the reasons for the holding in that case. It was not held that an owner may not testify as to the value of his (or her) property. The problem was that the testimony of the owner was grossly inconsistent with her previous sworn statements in the same case. The opinion further explains the meaning of the words "value to owner" as used in *Clift v. Fulton Fire Insurance Co.,* 44 Tenn. App. 483, 315 S.W.2d 9 (1958).

The opinion in *Thompson v. Sanders* is recommended for careful re–reading and thoughtful consideration by both appellant and appellee.

The third, fifth, sixth and seventh issues are determined adversely to appellant.

The fourth issue presented by appellant is as follows:

Whether the Trial Court erred in instructing the jury that the value of lost goods in a bailment case is to be "estimated, not by the market value . . . but by the moralistic standard of value to the owner."

The use of the word, "moralistic" was doubtless confusing to the jury. It is not found in ordinary desk–size dictionaries, but is defined in Webster's Third New International Dictionary, Unabridged, as follows:

Moralistic . . . 1. Characterized by or expressive of a concern for morality . . . 2. Characterized by or expressive of a narrow and conventional moral attitude. . . .

However admirable the application of morals to questions of law, it must be recognized that morality is a matter as to which there are many shades and degrees of dogma and attitude; whereas the law seeks a standard which is to be equally applicable to all and not varied according to varied individual opinion.

Moreover, the phrase, "moralistic standard of value to the owner" is not the best expression of the legal measure of damages for loss of property. As stated in *Thompson v. Sanders Transfer & Storage Company, supra,* the primary measure of damage for loss of property is the cost of replacement on the open market if the article is obtainable in the open market, but, if not, the *useful value* to the owner, as distinguished from "sentimental value."

The fourth issue is determined favorably to appellant.

The eighth issue presented on appeal is as follows:

Whether the Trial Court erred in permitting the introduction of the telephone book yellow pages showing that the Defendant advertised under "Warehouses."

It appears from the record that the advertisement was offered as evidence of representations which induced plaintiff to con-

tract with defendant. As such, it was material to the issues raised by the complaint which contains allegations that:

8. Plaintiff avers that the defendant, under the terms of the written contract and by other circumstances surrounding the entering of the contract, contracted to exercise an extraordinary degree of care to protect the plaintiff's property from theft.

9. Plaintiff avers that by the terms of the written contract and by the circumstances surrounding the entering of the written contract, the defendant guaranteed to protect the plaintiff's property from theft, in effect becoming an insurer against the theft of the plaintiff's property.

Any improper impression upon the jury from the word "warehouse" was subject to clarification by evidence of defendant.

The eighth issue is determined adversely to appellant.

The ninth issue presented by appellant is as follows:

Whether the Trial Court erred in admitting into evidence the fact that the Defendant changed its contract form subsequent to the execution of the contract in question.

The record is confusing as to the presentation and disposition of defendant's objection to the evidence in question. The colloquy between counsel and the Trial Judge ended as follows:

Mr. Nelson: I will *withstand* (sic) my objection.

The Court: Thanks. You don't have to do that anymore.

In the dim light of the foregoing quotation, it does not appear that the ninth issue was preserved for presentation to this Court. However, it should be stated that, if proper objection had been made and overruled, the issue would have been determined by this Court favorably to appellant.

■ The only conceivable circumstances for introduction of changes in contract would be cross examination or rebuttal of a witness who undertook to testify as to interpretation of the contract by the defendant. Such does not appear in this record.

■ The tenth, and last, issue presented by appellant is as follows:

Whether the Trial Court erred in its comment to the jury regarding the necessity of their reading the "Rental Agreement" when the same was introduced into evidence by the defendant.

The record shows that, following the identification of the lease contract as Defendant's Exhibit Number 5, the following occurred:

Q. With your permission, I would like to enter that as Defendant's Exhibit Number 1.

THE COURT: I believe it has been made an exhibit to the complaint. I don't mind doing it.

MR. NELSON: I'd like for the jury to see it.

THE COURT: Well, either way let's just go ahead and mark it as the next exhibit then and they will be separated. The only reason I mentioned that it is already in the record, but go ahead and mark it Exhibit Number 5.

(The aforementioned rental agreement was marked as Defendant's Exhibit Number 5 for identification.)

THE COURT: All right. Go ahead, please.

A JUROR: Do I have to read this whole thing?

THE COURT: Just read the paragraph. You don't have to look at any of it, if you don't want to.

What she means is do you want her to read that right now and have every juror read it entirely.

No, ma'am, as I mentioned a moment ago, when you retire to deliberate you can take that with you and read it all afternoon or all morning. Right now it is not necessary for you to do that.

MR. NELSON: All I ask you, ma'am, to do is look at "and that he will at his own expense obtain his own insurance, if any, on the property."

THE COURT: Well, they heard it and they can look at it.

While the record does not expressly state that the exhibit was passed to the jury, the inference is clear.

The misunderstanding arose because of the procedure in presenting the exhibit. When an exhibit has been identified by number and authenticated by a witness, counsel should then indicate verbally to the court what use is proposed for the exhibit. Counsel may desire to request suspension of testimony to allow time for display of the exhibit to the jury or for individual examination by each member of the jury. Counsel may desire to reserve presentation to the jury until a more convenient time, or counsel may request permission to read part or all of the exhibit to the jury. In any event, counsel should state his desires to the court and obtain approval of the court before proceeding. It is generally poor practice to casually hand an exhibit to the jury for examination while oral examination of a witness continues.

No error appears in the statements of the Trial Judge.

All issues presented on appeal have been discussed and determined.

The result is that the judgment of the Trial Court is reversed and the cause is remanded for a retrial in conformity with this opinion.

While the principal theory of plaintiff (bailment with presumptive negligence of defendant) has been eliminated by this decision, the complaint presents other theories which might properly be presented to the jury.

Costs of this appeal are taxed against the plaintiff–appellee.

Reversed and remanded.

SHRIVER, P. J., and LEWIS, J., concur.