# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 29, 2001

## STATE OF TENNESSEE v. MARK A. DOOLEN, JR.

**Appeal from the Circuit Court for Dickson County**
**No. CR-5088     Allen W. Wallace, Judge**

---

### No. M2000-01953-COA-R3-CD - Filed November 15, 2001

---

A thirteen-year-old boy was convicted of vandalism in juvenile court, and was ordered to pay restitution of over $6,600. He claimed that the amount of restitution was excessive, and appealed to the circuit court, which affirmed the juvenile court's determination. We affirm the order of restitution, but modify the amount, for the reasons set out below.

### Tenn. R. App. P. 3 Appeals as of Right; Judgment of the Circuit Court
### Affirmed as Modified and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

William B. (Jake) Lockert, III, District Public Defender; Chris Young, Assistant Public Defender, Ashland City, Tennessee, for the appellant, Mark A. Doolen, Jr.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. VANDALISM AND COURT PROCEEDINGS

Mark A. Doolen, Sr. and his thirteen-year-old son, Mark A. Doolen, Jr., were living in a house in Dickson County that they rented from David Hargrove. There was a garage on the property, which Mr. Hargrove used for restoring antique cars, principally 1963 and 1964 Chevrolet Impalas. One day, the juvenile attacked two of Mr. Hargrove's cars with a baseball bat, damaging or destroying windshields, headlights, taillights, grills and other parts.

On May 3, 2000, Mark A. Doolen, Jr. was adjudicated delinquent in the Dickson County Juvenile Court, on the basis of his vandalism and other offenses. Among other penalties, the juvenile court ordered him to pay restitution to Mr. Hargrove in the amount of $6,611.76. The young

man subsequently appealed the order of restitution to the Dickson County Circuit Court, pursuant to Tenn. Code. Ann. § 37-1-159(a).

The circuit court conducted a de novo hearing on the issue of restitution on July 26, 2000. The testifying witnesses were David Hargrove, Mark A. Doolen, Sr., and a Dickson County Deputy Sheriff who investigated the vandalism. At the conclusion of the proof, the court ordered Mark A. Doolen, Jr. to pay restitution in the same amount the juvenile court had ordered. The defendant then appealed the circuit court's ruling to the Court of Criminal Appeals.

After examining the record, the Court of Criminal Appeals concluded that the Court of Appeals was actually the proper place for filing this appeal, since it involved a finding of criminal activity on the part of a juvenile, and a subsequent appeal to the circuit court. *See* Tenn. Code. Ann. § 37-1-159(c). The Court of Criminal Appeals accordingly transferred the cause to us, pursuant to Rule 17, Tenn. R. App. P.

## II. TESTIMONY AS TO DAMAGES

At trial, Mr. Hargrove testified that with his father and his uncle he had been restoring and selling antique cars since he was fourteen years old, and that he owned eleven Chevrolet Impalas, which he used for parts. Of the two vehicles that were vandalized, he intended to restore only one, a rare two-door Super Sport model that he had purchased for $8,300, and which he estimated to be worth only $2,500 after the vandalism. The other car was a four-door model that Mr. Hargrove had purchased for parts. He estimated that it was worth between $250 and $300 before the vandalism, and implied that it had no value afterwards.

Mr. Hargrove gave the court a list of damaged parts, the price for replacing each one, and the name, phone number and contact person for each supplier who had furnished him with the prices. At the behest of the Public Defender, he designated which of the parts were for the four-door Impala, and which for the Super Sport. The glass and upholstery suppliers were in Clarksville, but the two suppliers who specialized in Impala parts were located in West Virginia and California. The total parts price was $4,866.76. The labor estimate on the glass replacement was $1,260. The estimate for shipping the parts was $385.

Mr. Doolen alleged that Mr. Hargrove was padding his damages by including items that were already damaged or missing prior to his son's vandalism. In particular, he testified that a $39.70 trunk emblem on the parts list had not been on the Super Sport, and that the four-door Impala was already missing its windshield, an item with a replacement cost of $169. He admitted, however, that since he was not really interested in the Impalas he never paid much attention to their condition.

The trial judge apparently credited Mr. Hargrove's testimony over Mr. Doolen's, but he was troubled by the fact that the value testified to for the four-door vehicle before the vandalism was far less than the cost of replacing the damaged parts on that vehicle. Nonetheless, the court found that the proof supported a restitution award of $6,611.76.

### III. MEASURING RESTITUTION DAMAGES

If a minor is judged to be delinquent, Tenn. Code. Ann. § 37-1-131(b)(1) gives the juvenile court the power to order him to pay monetary restitution for any damages he has caused. The court is authorized to determine the amount of monetary damages resulting from his conduct, and is directed to "order the child to make restitution for such damages unless the court further determines that the specific circumstances of the individual case render such restitution, or a specified portion thereof, inappropriate." We note that no evidence or argument was presented in this case to suggest that it would be inappropriate for the defendant to pay in full for the actual damages he caused.

The obvious question is how the court is to determine the damages suffered in this case. Appellee directs us to Tenn. Code. Ann. § 39-14-408 which defines the crime of vandalism, and which states in part that "acts of vandalism are to be valued according to the provisions of § 39-11-106(36) and punished as theft under § 39-14-105."

Tenn. Code. Ann. § 39-11-106(36) defines value as

> (i) The fair market value of the property or service at the time and place of the offense; or
> (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense;

These statutes, however, were enacted to determine, in accordance with the value of the property destroyed or damaged, what grade of theft an offender committed. *See* Tenn. Code Ann. § 39-14-105. We think that the general rules of damages should be applied to determine the amount of "damages" for which the court may order a juvenile offender to make restitution. *See* Tenn. Code Ann. § 37-1-131(b)(1).

According to the general rules, when property is lost or destroyed, the primary measure of damages is the cost of replacing that property on the open market. *Merritt v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250, 256 (Tenn. Ct. App. 1980). When the loss is not total, then damages may be calculated by determining the difference between the property's market value immediately before and immediately after injury, or the cost of repair, whichever is less. *Barnett v. Lane*, 44 S.W.3d 924, 928 (Tenn. Ct. App. 2000); *Williams v. Southern Railway*, 396 S.W.2d 98 (Tenn. Ct. App. 1965).

We must note in passing that Tenn. Code Ann. § 40-35-304(e) specifically excludes "general" damages from restitution awards while allowing awards of "special" damages. If these terms are given their usual meaning, the legislature has exempted from restitution awards damages that naturally result from the incident. *See Lance Productions, Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988). We think the legislature simply got the terms reversed, but since no one has raised that issue here, we will treat all the property damages as "special" damages under the Code.

## IV. CALCULATIONS

In the present case, the public defender contends that the trial court's method of calculating Mr. Hargrove's damages was flawed, and resulted in an inflated figure. We are inclined to agree. As we noted above, the trial judge himself confessed that he was uneasy about awarding a far greater sum for repairing the four-door Impala than the vehicle was worth.

We believe that the damages on that vehicle should be limited to its $300 market value before it was destroyed. We also believe that the trial court was correct in basing part of the restitution award on the cost of replacing the damaged parts for the Super Sport, since the reduction in the value of that vehicle was greater than the cost of repairing it. Of course, we must exclude from our calculation any of the parts that pertained to the four-door Impala. Using Mr. Hargrove's own parts list, we calculate the replacement cost on the parts for the Super Sport to be $2,517. We recognize that the labor Mr. Hargrove will have to perform to install the replacement parts might also be a legitimate component of damages. But since he did not testify as to the value of his labor, we decline to include it in the award.

The labor cost for glass replacement, which was to be performed by a Clarksville firm, was included in the proof. Since the $1,260 cost encompassed replacement of the same number of windows on both vehicles, that figure should be reduced by one-half. There is no breakdown by vehicle on the parts delivery estimate of $385, so we believe that figure should remain unaltered. Using these figures, we calculate the total restitution award as follows:

| | |
|---|---|
| Destruction of Four-Door Impala | $ 300 |
| Parts for Super Sports vehicle | $ 2,517 |
| Labor cost on glass replacement | $ 630 |
| Parts Shipping | $ 385 |
| TOTAL DAMAGES | $ 3,832 |

We accordingly modify the trial court's order to reflect a restitution award of $ 3,832.

### IV.

The order of the trial court is modified to show a restitution award of $ 3,832. Remand this cause to the Circuit Court of Dickson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

-4-