IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2001 Session

## ALEXANDER C. WELLS v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. 98000548**

---

**No. M2001-00144-COA-R3-CV - Filed December 5, 2001**

---

Appellant, Dr. Alexander C. Wells, was a professor at Tennessee State University ("TSU"). He was relieved of his teaching duties in 1992 and was asked to remove his property from the office and laboratory space he occupied at TSU. He moved some of his belongings in 1995. His remaining belongings were boxed and moved to the campus warehouse in 1996 because the space had been reassigned. When he retrieved his belongings in 1997, he found several items missing. Appellant then brought a claim in the Tennessee Claims Commission asking the State of Tennessee to return his property or, in the alternative, give him monetary compensation for the lost items. The Commission held that TSU had not been negligent in the care, custody and control of appellant's property. Therefore, the State was not liable for the missing property. We affirm the decision of the Commission.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission
Affirmed**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and WALTER C. KURTZ, S.J., joined.

Mark C. Scruggs, Nashville, Tennessee, for the appellant, Alexander C. Wells.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and George H. Coffin, Jr., Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.**

Appellant, Dr. Alexander Wells, began working at Tennessee State University ("TSU") in 1958 as a lab assistant. By 1969, he was a full-time professor in the Biology Department His problems began when he was accused of sexual harassment in 1990. This was not the first allegation of this nature during his teaching tenure. At this time, appellant was relieved of his teaching duties,

but was assigned duties elsewhere at TSU. The Head of the Biology Department, Dr. Terrance Johnson, requested appellant, by letter on August 26, 1992, to move his personal property from his office and laboratory space at Rooms 301 and 303 at Harned Hall. Appellant replied by letter on September 1, 1992 that he was entitled to the space due to his ongoing research through Research Centers in Minority Institutions Program ("RCMI"). Dr. Johnson checked with the RCMI contact for TSU and found that appellant had no funded research through that program. Dr. Johnson sent a letter to appellant dated September 3,1992 stating that appellant had been assigned a new office in McCord Hall and that there was no record of research through RCMI. Dr. Johnson also enclosed a key to appellant's new office.

Appellant did not retrieve his personal belongings or vacate Rooms 301 and 303. On January 23, 1993, Dr. Washington, the Vice-President for Academic Affairs, sent appellant a letter notifying him of his appointment to the Graduate School. Appellant was told to relocate to Crouch Hall by January 29, 1993. Appellant did not remove his belongings from Rooms 301 and 303 in Harned Hall. August 26, 1993, Dr. Johnson informed appellant by letter that Room 303 in Harned Hall had been assigned to a new professor, Dr. Bennie Washington. Appellant replied by letter on September 3, 1993. He requested that the lock be replaced on his office. In that letter, he also called the replacement of the original lock "an ACT OF TRANSGRESSION" and requested Dr. Johnson to "[p]lease stop the harassment now."

There had been ongoing litigation concerning the sexual harassment allegations. The Tennessee Board of Regents found appellant guilty of "capricious disregard of accepted standards of professional conduct" in the Summer of 1995.[1] Appellant was terminated from his position as Professor of Biology at TSU and ordered to leave the campus. The university asked him to clean out his office at this time. Appellant had occupied the offices and the labs for approximately 15 years. On October 7, 1995, appellant brought movers to pack up and move his belongings. Campus security and Dr. Johnson were present for the move. The movers worked for approximately four and a half hours, but were unable to move everything. On October 14, 1995, appellant returned, but it was raining, and he was unable to move anything. On October 21, 1995, they returned but there was no key available for Room 301. On November 11, 1995, appellant returned without the movers, but could not access Room 303 because it was occupied.

In 1996, Room 301 was assigned to a new professor. The office was cleaned out by TSU employees and any personal items were boxed and sent to Central Receiving for the appellant to pick up. Appellant attempted to pick up his items in June of 1997. Appellant maintained that much of the property left in Rooms 301 and 303 was missing.

On September 22, 1997, appellant filed a claim with the Commission asking for the return of the property that had been left in his office or monetary compensation. May 30, 2000, the

---

[1] Appellant appealed this decision to the Davidson County Chancery Court, where the decision was overturned. The Tennessee Supreme Court later affirmed the chancery court's decision. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779 (Tenn. 1999).

Commission filed a judgment denying appellant's claim. June 2, 2000 appellant filed a Motion for En Banc Hearing. October 25, 2000, the Commission filed an order granting the en banc hearing and affirming the dismissal of appellant's claim.

## II.

The appellant argues two issues on this appeal: (1) the Commissioner erred in applying the wrong standard of care and (2) the Commissioner erred in holding that appellant had abandoned his personal property. Under Tenn. Code Ann. § 9-8-403(a)(1), any appeal from a decision of the Commission to this court is made pursuant to the Tennessee Rules of Appellate Procedure. Under Tenn. R. App. P. 13(d), we review this case *de novo* upon the record with a presumption of correctness for the Commission's findings of fact, unless the preponderance of the evidence is otherwise. However, this presumption does not extend to issues of law. Tenn. R. App. P. 13(d).

The Commissioner's judgment stated in part:

> The Commission finds that Dr. Wells, like all employees, was subject to be assigned his duties and the location to carry them out. Dr. Wells, rather than the University, was the transgressor when he continued to occupy space in Harned Hall contrary to the correspondence and instructions he received from Dr. Johnson. By his actions beginning in August 1992, Dr. Wells abandoned his personal property when he left the property in a place where he clearly understood it had no right to be. And the property was left in that location for over three years.

> It is further found that Dr. Wells had the obligation to mitigate damages. Despite the problems he encountered on October 21, 1995 and November 11, 1995, it appears that Dr. Johnson and Dr. Myles were ready and willing to help Dr. Wells obtain his personal property. But Dr. Wells made no further effort to arrange to pick up the remaining items of his personal property.

> Finally, Mr. Pillow and another employee were told to clean Room 301 for another new professor. The steps taken by them in respect to any personal belongings of Dr. Wells cannot reasonably be characterized as negligent care, custody or control of property under the circumstances surrounding this matter. This matter is analogous to the right of a landlord whose tenant maintains personal property on leased premises. When the lease expires, it is proper for the landlord to clean up those premises for the use of other tenants.

The Commissioner applied the standard of care found in Tenn. Code Ann. § 9-8-307(a)(1)(F) for monetary claims against the State for negligent care, custody or control of personal property. It is the ordinary standard of a "reasonable person."

Appellant argues that the Commission should have applied a higher standard of care, and compares this situation to a "constructive bailment." This is a question of law, therefore, we look at this question *de novo* with no presumption of correctness.

This court has defined a bailment as, "a delivery of personalty for a particular purpose or on mere deposit, on a contract expressed or implied, that after the purpose has been fulfilled, it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it." *Merritt v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250, 252 (Tenn. Ct. App. 1980). We have also stated that when there is no express contract between the parties evidencing a bailment, there must be a full transfer of the possession and the control of the property giving the other party sole custody of the property. *Id.* at 253. This court turned to the Oregon Court of Appeals for an explanation of the difference between bailment and custody:

> In the distinction between bailment, or possession, and mere custody, . . . the element of intent to control and possess plays the leading part. Where the owner of the goods places them in the actual physical control of another but does not intend to relinquish the right, as distinct from the power, of dominion over them, there is no bailment or possession but only a mere custody.

*Harmon v. Dunn*, No. 01A01-9607-CH-00344 1997 WL 136462, at * 6 (Tenn. Ct. App. March 27, 1997) (quoting *Dundas v. Lincoln County*, 618 P.2d 978, 982-83 (Or. Ct. App. 1980)).

We find that there is no constructive bailment in this case. It is clear from the record that the appellant did not intend to "relinquish the right . . . of dominion over" his property. The property was not given to TSU for a particular use, nor was it given to TSU to store for him. Appellant did not intend for TSU to control and possess his property. Appellant merely failed, for various reasons, to retrieve his property from his former offices. TSU did not intend to have exclusive control over his property. It is clear that the Commissioner applied the correct standard of care in this situation.

### III.

Appellant's next issue is that the Commissioner erred in holding that appellant had abandoned his personal property. We, however, choose to pretermit this issue because, even if he is correct, we can find no basis for the State's liability. The appellant directs us to Tenn. Code Ann. § 66-29-112 which requires a five year period for an item to be abandoned. However, this statute applies to "property . . . that is held or owing in the ordinary course of the holder's business . . . ." This statute under the Uniform Disposition of Unclaimed [Personal] Property Act applies primarily to businesses that deal with monetary assets. Clearly, this statute is not applicable to this situation. The Commissioner's holding that appellant abandoned his property is a finding of fact and entitled to a presumption of correctness.

## IV.

Appellant waited eighteen months to retrieve his property after his final attempt at a formal move.  There was no proof, other than from the appellant, that all of the missing items were in Rooms 301 and 303, or what actually happened to much of the property in Rooms 301 and 303 between November of 1995 until it was packed up and later sent to Central Receiving at TSU.

We find that the evidence supports the Commissioner's findings that TSU was not negligent in the care, custody or control of appellant's property and acted as a reasonable person would in dealing with the property in question.  Therefore, we affirm the decision of the Commission.  Tax the costs of this appeal to appellant, Alexander C. Wells.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.