IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief December 28, 2001

## DEBBIE RISNER v. NATHAN HARRIS

**An Appeal from the Circuit Court for Obion County**
**No. 0-428     William B. Acree, Jr., Judge**

**No. W2001-01041-COA-R3-CV - Filed August 21, 2002**

This is an action to recover personal property. The plaintiff and defendant lived together for seventeen years. In November 1999, the plaintiff moved out. She left personal property in the trailer in which the couple was living, in the nearby convenience store owned by the defendant, and in a storage unit in another town. In August 2000, the convenience store caught on fire, and the plaintiff's personal property in the store was destroyed. Soon thereafter, the defendant took possession of the plaintiff's other personal property that had been held in the storage unit and called her to come get it. In November 2000, the plaintiff filed a warrant in general sessions court to recover her personal property from the defendant. She claimed that the defendant had prevented her from retrieving any of her personal property. She received a judgment which was appealed to circuit court. The circuit court entered a judgment in favor of the plaintiff, awarded damages, and ordered the defendant to return certain items to the plaintiff. The defendant now appeals. We reverse the trial court's decision with respect to two of the items ordered returned and the property that the plaintiff had kept in the storage unit in another town, and affirm the remainder of the order.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed in Part and Reversed in Part**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Bruce Moss, Union City, Tennessee, for the appellant, Nathan Harris.

David L. Hamblen, Union City, Tennessee, for the appellee, Debbie Risner.

## OPINION

Plaintiff/Appellee Debbie Risner ("Debbie") and Defendant/Appellant Nathan Harris ("Nathan") lived together for approximately seventeen years. Their first home was in Dyersburg, Tennessee. After several years, Nathan purchased a small convenience store in Hornbeak, Tennessee. The parties moved into a small trailer near the store and put some of their furniture and

belongings into a rented storage unit in Dyersburg, Tennessee. Those items remained in the storage unit for over ten years while the parties were living in the trailer in Hornbeak.

During the time in which the parties lived in the trailer near the convenience store, they also stored personal belongings in a room at the back of the store. Those items included, among other things, Debbie's clothing, some Home Interior home furnishings, and a hand-painted carousel horse. In addition, Debbie purchased a tanning bed with borrowed funds, and the tanning bed was kept in the store. Customers who visited the store paid for use of the tanning bed.[1]

During the course of their relationship, the parties separated numerous times. Debbie asserts that their final separation occurred in November 1999, when she left the trailer and took with her just a few of her clothes. In the legal proceedings she later filed, Debbie testified that, after the separation, Nathan refused to allow her to retrieve the remainder of her personal possessions from the trailer or the store. She described an incident in which she spoke with Nathan over the telephone, and he advised her that she could come get her things. However, when Debbie arrived with her husband, Nathan cursed her and told her to leave. Debbie's husband, Mr. Risner, corroborated Debbie's testimony that Nathan cursed her and threw her off the property. In contrast, Nathan denied that he prevented Debbie from retrieving her belongings. He said that at times she returned to get some of her belongings, and that on numerous occasions he had asked her to get her possessions. Tammy Ray, a former employee of Nathan, testified that she overheard Nathan speaking to Debbie on the telephone, and that she heard Nathan ask Debbie to retrieve her property. Ray also testified that she was present when Debbie came by to pick up some of her belongings.

In August 2000, Nathan's store was severely damaged by fire. The fire destroyed the tanning bed, the carousel horse, Debbie's clothes, autographed pictures, and other personal items that had been stored in the back room at the store. An insurance adjuster representing Nathan's insurance company testified that Nathan attempted to claim the tanning bed as a loss due to the fire. The adjuster told Nathan that he could not receive insurance proceeds for the loss of any property that belonged to Debbie. The adjuster also said that Nathan's losses from the fire (including the loss of the building, the inventory, and other personal property) exceeded the policy limit of $100,000. Therefore, Nathan received the full amount of proceeds payable under his insurance policy.

Nathan testified that, some time after the fire, he removed all items from the parties' storage unit, including Debbie's belongings. At that time, he discovered that some of the items, including a day bed, had been ruined while in storage.

Debbie testified that, after the fire, Nathan called her. Without mentioning the fire, he told her to come get her belongings. When she arrived at the store, Debbie realized that there had been a fire. She found that the tanning bed and the carousel horse had been destroyed. She saw that the

---

[1]It is unclear from the record whether Debbie, Nathan, or both received the proceeds from the rental of the tanning bed.

smoke from the fire had covered the floor, and that there was a bare spot on the floor where boxes containing her Home Interior home furnishings had been sitting.

Subsequently, in November 2000, Debbie filed a warrant in the General Sessions Court of Obion County to recover her personal property from Nathan. *See* Tenn. Code Ann. § 29-30-103. The general sessions court awarded Debbie damages for her personal property in the amount of $10,500. Nathan then appealed the case to the Obion County Circuit Court.

On March 2, 2001, the Circuit Court conducted a bench trial on Nathan's appeal from the General Sessions judgment. During Debbie's testimony before the Circuit Court, she submitted a list of personal property belonging to her that was left in Nathan's possession after their separation in 1999, as well as her estimate of the value of the property ("Exhibit 1"). In the list, she separated the claimed items into a "store" category, listing the items owned by her that had been stored in the back room of Nathan's store or in his trailer after the parties' separation, and a "storage" category, listing the items that belonged to Debbie that had been kept in the parties' storage unit in Dyersburg. The "store" category listed $18,995 in property, including (among other things) the tanning bed ($2,200), a computer ($2,400), a Dodge Colt automobile ($2,000), some Home Interior home furnishings ($1,750), two men's diamond rings ($2,750), and a woman's diamond ring ($3,100).[2] The "storage" category listed $4,150 in property, including a day bed ($800), some Home Interior home furnishings ($1,500), and clothes ($700).[3]

Debbie testified that the Dodge Colt automobile and the computer listed on Exhibit 1 had been pledged as collateral for loans. She did not make the payments on those loans following the parties' separation, purportedly because Nathan would not let her use the items. Nathan claimed that the computer and the automobile were repossessed by financing companies because Debbie stopped making payments. He said that both items were in his possession because he later purchased the computer from someone who bought it from the finance company, and his father purchased the Dodge Colt automobile from the lender who repossessed it.

In his testimony, Nathan claimed that the two men's diamond rings on Debbie's list of belongings were gifts to him from Debbie. On cross-examination, Debbie admitted that the rings were gifts to Nathan. Debbie testified that she still owed money borrowed to purchase one of the rings. Debbie asserted that the woman's diamond ring on her list of belongings was a gift to her from Nathan. Nathan acknowledged that he had given Debbie the ring, but claimed that it belonged to him because she returned the ring to him after a temporary separation while the two were still living in Dyersburg. Moreover, Nathan testified that, in previous litigation in Dyer County, two court orders awarded him the diamond ring.

---

[2] That category also included items of indeterminable value: family pictures, a 20-year-old Donny Osmond doll, and an autographed picture of George Jones and Vern Godsin.

[3] This category also included items of indeterminable value: family pictures and yearbook, and a hand sewn quilt.

After the trial, on April 2, 2001, the Circuit Court granted Debbie a money judgment in the amount of $7,685. The Circuit Court also issued an order compelling Nathan to deliver the three diamond rings to Debbie.[4] There is no transcript of the proceedings below, but the parties agreed upon a Joint Statement of the Evidence ("Joint Statement"). The Joint Statement says that the award of $7,685 reflects one-half of the value of the items on Exhibit one, excluding the three diamond rings. The Joint Statement states further that the trial court held that Nathan prevented Debbie from retrieving her property from him, and that, therefore, he was under an obligation to insure her property. On May 1, 2001, Nathan filed a pro se appeal of the decision of the Circuit Court. On August 22, 2001, Nathan's appellate counsel filed a notice of appearance.

On appeal, Nathan argues that the trial court erred in failing to deal with each of the claimed items of personal property separately, and further erred by not applying the law of bailment. He asserts that it was undisputed that the three rings were his property, and that therefore the trial court erred in ordering him to turn them over to Debbie. Nathan argues further that he should not be held responsible for the property that was ruined while in storage. Thus, he claims, the judgment in favor of Debbie should be reversed.

We review the trial court's decision de novo, with a presumption of correctness of the trial court's findings of fact, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Worth v. Cumberland Mountain Prop. Owners Ass'n*, No. 03A01-9709-CV-00442, 1999 Tenn. App. LEXIS 92, at *7-*8 (Tenn. Ct. App. Feb. 10, 1999). We review questions of law de novo, affording the trial court's legal conclusions no such presumption. *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996). In an action to recover personal property, the plaintiff must show that she was entitled to possession of the claimed property. *See* Tenn. Code Ann. § 29-30-101; *see also Rags, Inc. v. Thoroughbred Motor Cars, Inc.*, 769 S.W.2d 493, 495 (Tenn. Ct. App. 1988) (noting that the purpose of the statute is to determine who has the right to possess certain personal property).

We first address Nathan's argument that the trial court erred in failing to find that all of the diamond rings at issue belonged to him. Nathan asserts that the evidence preponderates against the trial court's finding that Debbie was entitled to possession of the two men's diamond rings, because the evidence is undisputed that they were gifts to him from Debbie. Furthermore, Nathan claims that his testimony is unrefuted that the woman's diamond ring, though initially a gift from him to Debbie, was returned to him from her by order of the Dyer County court. Thus, he claims, Debbie has no right to possession of those items. Debbie argues that the trial court did not err in ordering the men's rings returned to her because she still owed money on them. In addition, she denies that Nathan had any claim to the woman's ring, because he had given it to her as a gift.

With respect to the men's diamond rings, Nathan testified in the Circuit Court proceedings, and Debbie admitted, that they were gifts from her to Nathan. The fact that she still owes money for the purchase of the rings does not mean that she owns them. Under these circumstances, we must

---

[4]Neither party appeals the trial court's valuation of the property. In addition, neither party appeals the trial court's decision to award the value of the property rather than ordering a transfer of the property itself.

conclude that the evidence preponderates against the trial court's finding that Debbie is entitled to possession of the two men's diamond rings, and we reverse the trial court's order that Nathan return those two rings to Debbie.

The evidence regarding the woman's diamond ring was disputed. The trial judge had the duty to weigh the conflicting evidence on this subject and determine the credibility of the witnesses. His determinations of credibility are entitled to great weight on appeal. *See Worth*, 1999 Tenn. App. LEXIS 92, at *9-*10 (stating that the trial judge's credibility determinations are entitled to great weight). In this case, the trial judge credited the testimony of Debbie that the woman's diamond ring belonged to her. Other than Nathan's testimony, there is no evidence in this record regarding the proceedings in the Dyer County court upon which Nathan relies. Giving appropriate weight to the trial court's implicit finding of credibility in Debbie's favor, we cannot find that the decision to award Debbie the woman's diamond ring was against the preponderance of the evidence.

Next, Nathan argues that the trial court erred in awarding Debbie damages for the items in the storage unit in Dyersburg. He notes that the evidence is undisputed that the property was damaged while it was in storage, and there is no evidence that he prevented Debbie from getting those items either while they were in storage or when he removed them from storage after the fire. Debbie asserts that Nathan retrieved her items from storage after the fire because his own belongings had been destroyed and he needed the items for his own personal use. Therefore, she contends, she is entitled to the value of the items that were destroyed while in storage.

It is undisputed that the "storage" property was damaged or destroyed during the time it was in storage. According to the parties' Joint Statement, Nathan retrieved all of the items from storage over ten years after they were put in storage. The evidence is also undisputed that he then called Debbie to "come and get her things." The Joint Statement includes no evidence that Nathan ever prevented Debbie from retrieving her property from the storage unit. Moreover, there is no allegation that Nathan destroyed or damaged any of the items belonging to Debbie either before or after he removed them from storage. Therefore, because the evidence indicates that the items at issue were ruined while in storage, at a time when Nathan was not in wrongful possession of those items, and because he never prevented Debbie from retrieving her things while in storage, we must conclude that the trial court erred in holding Nathan liable for the value of that property. Accordingly, we reverse the trial court's award of damages for the value of the property in storage.

Nathan argues further that the trial court erred in awarding Debbie damages for two items that did not belong to Debbie, despite the fact that they were listed in the "store" category of Exhibit 1, namely, the Dodge Colt and the tanning bed.[5] Nathan claims that the record is clear that the Dodge Colt no longer belonged to Debbie because it had been repossessed and was subsequently sold to his father. With respect to the tanning bed, Nathan asserts that the fact that his insurance adjuster thought that it was his property and included the tanning bed in his insurance claim indicates that the tanning bed in fact belonged to him. Debbie asserts that she stopped making payments on

---

[5]Nathan also includes the three diamond rings in that list. Those items have been addressed above.

the debt secured by the car because Nathan would not let her have it. She also notes that the insurance adjuster's belief that Nathan owned the tanning bed does not indicate that he in fact owned the bed.

Again, on these issues, the trial court was called upon to determine the credibility of the witnesses and resolve conflicting testimony. The evidence is undisputed that Debbie was making payments on a loan secured by the Dodge Colt until she left Nathan in 1999. She testified that she stopped making payments because Nathan refused to allow her to have possession of the car. The car was then repossessed and purchased by Nathan's father. The trial court apparently concluded that Nathan in fact prevented Debbie from having access to the Dodge Colt. Her failure to make payments, the subsequent repossession, and his father's later purchase of the vehicle does not alter that factual finding. As to the tanning bed, the evidence is undisputed that Debbie borrowed money to purchase the tanning bed. Nathan submitted no evidence to the trial court indicating that he owned the tanning bed. The fact that Nathan's insurance agent may have believed Nathan's representations that he owned the tanning bed does indicate that he in fact owned the bed. Thus, the trial court was entitled to credit Debbie's testimony that she owned the tanning bed and that Nathan prevented her from retrieving it before it was destroyed. Accordingly, we affirm the trial court's decision to award Debbie the value of the Dodge Colt and the tanning bed.

Finally, Nathan argues on appeal that the balance of the items listed on Exhibit 1 were in his possession as a result of a gratuitous bailment, and that he, therefore, would be responsible for the loss of that property only upon the showing of gross negligence. Because there was no showing of gross negligence in the loss of this property while it was in his possession, he claims, he should not be held liable to Debbie for its value.

"A bailment is a delivery of personalty for a particular purpose or on mere deposit, on a contract expressed or implied, that after the purpose has been fulfilled, it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it." *Merritt v. Nationwide Warehouse Co.*, 605 S.W.2d 250, 252 (Tenn. Ct. App. 1980); *see also Jernigan v. Ham*, 691 S.W.2d 553, 556 (Tenn. Ct. App. 1994) (stating that a bailment is a contractual agreement, and the contract may be either express or implied from the conduct of the parties). In this case, the Joint Statement indicates that, when Debbie moved out of the trailer, she took with her "just a few of her clothes," and left behind other property that she intended to retrieve. The trial court found that Nathan then prevented her from retrieving this property. There is no evidence that Debbie intended Nathan to keep her property on her behalf. Rather, the evidence preponderates in favor of the trial court's conclusion that Nathan would not allow Debbie to get her property until the August 2000 fire destroyed most of it. Because there is no evidence of an express or implied agreement between the parties, we find that no bailment was created.

Nathan argues that a constructive bailment arose when Debbie moved out because he then lawfully acquired possession of her personal property. Though there was no specific agreement, he maintains, the facts could be construed as creating a constructive bailment. However, there is no evidence that Nathan had any right to possession of Debbie's property. Indeed, the trial court

expressly held that Nathan prevented Debbie from returning to the premises to retrieve her personal property.  There is no evidence indicating that Nathan intended to keep Debbie's property safe or deliver it to her upon her request.  Thus, the trial court did not err in concluding that there was no constructive bailment.

Therefore, the trial court's order is reversed insofar as it requires Nathan to give Debbie the two men's diamond rings and the value of the property in the "storage" category in Exhibit 1.  The remainder of the trial court's order is affirmed.

The decision of the trial court is affirmed in part and reversed in part as set forth above. Costs are to be taxed equally to the appellant, Nathan Harris, and his surety, and to the appellee, Debbie Risner, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE